**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

THE MOST WORSHIPFUL GRAND LODGE                                        PLAINTIFF
OF FREE AND ACCEPTED MASONS OF THE
STATE OF ARKANSAS

v.                                             No. 4:15CV219 JLH

DCG/UGOC EQUITY FUND, LLC; UNITED GROUP
OF COMPANIES, INC.; PAGEONE FINANCIAL, INC.;
EDGAR R. PAGE; and JOHN DOES 1-10                                      DEFENDANTS

## OPINION AND ORDER

This action arises out of an investment made by The Most Worshipful Grand Lodge of Free

and Accepted Masons of the State of Arkansas in a private investment fund called DCG/UGOC

Equity Fund, LLC.  The Lodge alleges that it was induced by the defendants, through misstatements

and omissions of material facts, to purchase securities in the form of limited liability company

interests in the Equity Fund.  The Court previously dismissed two defendants[1] and three counts from

the action, but four counts[2] remain:  Count I for securities fraud in violation of section 10b of the

Securities Exchange Act; Count IV for securities fraud in violation of Ark. Code Ann. § 23-42-

106(a)(1)(B), the Arkansas Securities Act; Count V for common law fraud; and Count VIII, against

PageOne Financial, Inc., for breach of fiduciary duty.  Document #46 at 31.  The Equity Fund and

the United Group of Companies, Inc., have filed a motion for summary judgment on the remaining

---

[1] The Court dismissed DCG/UGOC Funds Management, LLC and DCG Funds Management, LLC.  Document #46 at 31.  DCG/UGOC Funds Management, LLC organized and managed the Equity Fund, and DCG Funds Management, LLC was a member of DCG/UGOC Funds Management, LLC.  Document #46 at 2.

[2] These counts are limited to misrepresentations and omissions regarding collection issues, properties held by the Equity Fund, information about permanent financing, negative equity status, and an inability to cover debts, as alleged in paragraphs 17c, 22e, 22g, 22h, 22j, and 29.  Document #46 at 31.  Claims based on other misrepresentations and omissions were dismissed.  *Id.*

counts against them, arguing that the Lodge's claims against them are barred by the relevant statute of repose and statutes of limitations.  Document #65.  In response,  the Lodge has requested leave to file a second amended complaint.  Document #81.  For purposes of ruling on the motion for summary judgment, the Court has accepted the second amended complaint as the operative complaint.  It does not change the outcome.

## I.

In January of 2010, the Senior Vice President of the United Group, Bryan Harrison, contacted the Lodge's investment advisor, Jeremy Cook.  Harrison, as the representative of the Equity Fund and the United Group, began to solicit the Lodge's investment in the Equity Fund, which the United Group packaged and promoted.  The Equity Fund invested in real estate, particularly student and senior housing.  Edgar R. Page, Chief Executive Officer of New York corporation PageOne Financial, also promoted the Equity Fund to the Lodge.  PageOne is an investment advisor registered with the Securities and Exchange Commission.

Sometime in the first quarter of 2010, Harrison and Page traveled to Little Rock and made a presentation regarding the Equity Fund to the Lodge's Board of Finance.   The Lodge initially alleged that this presentation occurred on April 20, 2010, but discovery has disproven that allegation.  The second amended complaint now alleges that the presentation occurred on or about March 17, 2010.  The exact date remains undetermined, but for summary judgment purposes it is undisputed that the presentation took place in March of 2010.  *See* Document #97 at 2, ¶ 5.  Harrison provided the Lodge with a confidential Private Placement Memorandum (PPM) on or before the date of the presentation and, along with Page, made a presentation to the Board about the investment.  The PPM and the presentation to the Board are the basis for the alleged misrepresentations and omissions.  The Board asked Harrison and Page several questions.  The Board asked whether anyone

would be paid a commission for the Lodge's investment and was told that no one would be paid a commission. The Board questioned whether there was an affiliation between UGOC and PageOne Financial and was told that there was not. The Board asked whether there were any collection issues with student housing and was told that the Equity Fund was a solid investment, in which no one had lost money in thirty years. The Board also was told that if the Lodge wanted out of the investment, the United Group would find a buyer or its chairman would buy the Lodge's interest. The Board asked when the Lodge could expect distributions and was told that it could expect a four-percent distribution in 2011 and at least six percent per year after 2011. The Lodge contends that these statements were false. The Lodge also contends that Harrison and Page failed to disclose material facts regarding the investment.

The Lodge ultimately agreed to invest a total of $500,000 and on April 20, 2010, executed four subscription agreements for the purchase of limited liability company interests in the Equity Fund. Between the presentation to the Board and April 20, 2010, Cook was in frequent communication with Harrison and Page. The second amended complaint alleges that some or all of the representations by Harrison and Page to the Board through April 20, 2010, were false. The only evidence of any specific statement after the presentation to the Board, however, is testimony by Cook stating that on April 20, 2010, Harrison said in a telephone conversation that he had no updated information regarding the Equity Fund.[3]

John Peterson, Senior Vice President of the United Group, became the Lodge's primary contact person with the Equity Fund after the execution of the agreements. In 2011 the Lodge

---

[3] Cook has submitted two affidavits, both of which say that between the presentation to the Board and April 20, 2015, he was in frequent contact with Harrison and Page and that on April 20, 2015, Harrison stated that there were no updates to the information previously provided. Document #69-1 at 2, ¶¶ 6 and 8; Document #77-1 at 1-2, ¶¶ 2 and 5.

requested that Peterson provide information about distribution dates.  Peterson indicated that the United Group was refinancing the properties in the Equity Fund and that once that process was complete, the Lodge would receive a $60,000 distribution.  Peterson eventually informed the Lodge that the refinancing was complete, but the Lodge never received a distribution.

In 2012 the Lodge asked Peterson to find a buyer for its interest in the Equity Fund.  He responded that the United Group would attempt to find a buyer and reported several offers, but failed to provide the names of any prospective buyers.  In 2013 Peterson notified the Lodge that the United Group was working to sell some of its property to the State of New York.  In September of that year, Peterson ceased communicating with the Lodge.  In early 2015 the Lodge received a statement from T.D. Ameritrade indicating that its investment in the Equity Fund had no value.

## II.

A court should grant summary judgment if the evidence demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating the absence of a genuine dispute for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986).  If the moving party meets that burden, the nonmoving party must come forward with specific facts that establish a genuine dispute of material fact.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc).  A genuine dispute of material fact exists only if the evidence is sufficient to allow a reasonable jury to return a verdict in favor of the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).  The Court must view the evidence in the light most favorable to the nonmoving party and must give that party the benefit of all reasonable inferences that can be

drawn from the record. *Pedersen v. Bio-Med. Applications of Minn.*, 775 F.3d 1049, 1053 (8th Cir. 2015).  If the nonmoving party fails to present evidence sufficient to establish an essential element of a claim on which that party bears the burden of proof, then the moving party is entitled to judgment as a matter of law.  *Id.*

## III.

### A.     Rule 10b-5 Securities Fraud.

The Lodge commenced this action on April 17, 2015.  The presentation to the Board by Harrison and Page occurred in March of 2010.  The Lodge executed the subscription agreements on April 20, 2010.

The defendants' motion for summary judgment on the federal securities fraud claims hinges on the application of 28 U.S.C. § 1658(b), which provides that

> [A] private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws . . . may be brought not later than the earlier of
>
> > (1) 2 years after the discovery of the facts constituting the violation; or
> >
> > (2) 5 years after such violation.

Subsection (1) is a statute of limitations, while subsection (2) is a statute of repose.  *Dusek, et al. v. JPMorgan Chase & Co., et al.*, No. 15-14463, 2016 WL 4205857 at *2 (11th Cir., Aug. 10, 2016). Neither party disputes that the five-year statute of repose applies, but the parties disagree about what constitutes a "violation" that starts the five-year period of repose.  The Lodge maintains that the period of repose begins to run on the date of the transaction, because the transaction is the "violation."  The Equity Fund and the United Group maintain that the period of repose begins to run on the date of the alleged misrepresentations and omissions because such fraudulent conduct is the "violation."  Document #70; Document #98 at 5; Document #66 at 5.  Neither the United States

Supreme Court nor the Eighth Circuit has decided the issue.  *See Merck & Co., Inc. v. Reynolds*, 559 U.S. 633, 648, 130 S. Ct. 1784, 1796, 176 L. Ed. 2d 582 (2010) (interpreting section 1658(b)(1)).

"The apparent majority of courts hold that the five year period begins to run from the date of the misrepresentation."  Thomas Lee Hazen, 4 Law Sec. Reg. § 12:157 (2016).  The leading cases are from the Third and Seventh Circuits.  The Third Circuit held in *In re Exxon Mobil Corp.* that the statute of repose in section 1658(b)(2) begins to run when allegedly fraudulent statements are made, not when the parties engage in the securities transaction.  500 F.3d 189, 200 (3rd Cir. 2007).  The dispute arose out of the merger between Exxon and Mobil.  *Id.* at 189.  Former shareholders of Mobil alleged that Exxon made false or misleading statements in a proxy statement issued in anticipation of the merger votes.  *Id.* at 191.  The Third Circuit succinctly framed the issue: "The question we address here is when did § 9(e) and § 1658(b)(2)'s statutes of repose begin to run—at the time of Exxon's alleged misrepresentation (the March 1999 proxy statement) or at the time its merger with Mobil was consummated (late November 1999)."  *Id.* at 199 (footnote omitted).  In deciding whether the particular event that triggers section 1658(b)(2) was the fraud or the transaction, the Third Circuit reasoned:

> [W]hile it is true that for a § 10(b) claim to "accrue" there must be an exchange of securities (here, the November 1999 consummation of the merger) . . . and only then do plaintiffs suffer any actual injury, nevertheless the specific acts targeted by a § 10(b) cause of action are fraudulent statements themselves.  It is therefore more consonant with the traditional understanding of how a statute of repose functions for the repose periods of § 9(e) and § 1658(b)(2) to begin from the date of Exxon's alleged misrepresentation: the March 26, 1999, proxy statement.
>
> * * *
>
> The Supreme Court has also weighed in, although only in a *dictum*.  The concluding line of *Lampf*, which disposes of the case, reads: "As there is no dispute that the earliest of plaintiff-respondents' complaints was filed more than three years[4]

---

[4] *Lampf* pre-dated section 1658(b)(2), but the statute of repose governing securities fraud actions prior to Sarbanes-Oxley "was identical to § 1658(b)" apart from the number of years the

after petitioner's alleged *misrepresentation*s, plaintiff-respondents' claims were untimely." [*Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 364, 111 S. Ct. 2773, 2782, 115 L. Ed. 2d 321 (1991)] (emphasis added).  As the misrepresentation in *Lampf* occurred at about the same time as the exchange of securities, whether the date to begin running the statute of repose is the date of the misrepresentation was not necessary to the Court's decision.  Nonetheless its focus was on the alleged misrepresentation, not the exchange of securities.

*Id*. at 200.  Likewise, the Seventh Circuit held that the repose period "runs from the date of the fraud rather then the date of the injury."  *McCann v. Hy-Vee, Inc.*, 663 F.3d 926, 932 (7th Cir. 2011).  The question before the Seventh Circuit was different from the question here, because the plaintiff argued that the period of repose did not begin "until a harm befalls the plaintiff from the misconduct."  *Id*. at 927.  Nevertheless, the Seventh Circuit made clear that the period of repose was triggered when the defendant allegedly lied to the plaintiff.  *Id*. at 932.

Although the Supreme Court has not ruled on the precise issue before the Court, it has explained the operation of a statute of repose in a way that supports the Third and Seventh Circuits' interpretation of section 1658(b)(2).  The Supreme Court explained that a statute of repose "puts an outer limit on the right to bring a civil action" and that this limit is "measured not from the date on which the claim accrues but instead from the date of the last culpable act or omission of the defendant."  *CTS Corp. v. Waldburger*, 134 S. Ct. 2175, 2182, 189 L. Ed. 2d 62 (2014).

The Lodge relies on an unpublished Second Circuit opinion, *Arnold v. KPMG LLP*, 334 Fed. Appx. 349 (2009), for its argument that the period of repose began on April 20, 2010.  Document #70 at 5; Document #98 at 7.  There, the court held that the plaintiff's securities fraud claims were time-barred because more than three years[5] had passed since the parties committed themselves to

period of repose lasted.  *Id*. at 199.

[5] The Second Circuit applied the former statute of repose.

complete the transaction.  *Id*. at 351.  The defendant sold the tax shelters to the plaintiff and then repeatedly assured him that the tax shelters and related securities transactions were legal and legitimate, but the IRS eventually condemned these devices.  *Arnold v. KPMG LLP*, 543 F. Supp. 2d 230, 233 (S.D.N.Y. 2008).  The plaintiff commenced the action in 2005, claiming fraud in a series of transactions that occurred over several months in 1997, and arguing that the period of repose did not begin to run until the defendant made the last alleged misrepresentation as to the legality and legitimacy of the tax shelters.  *Arnold v. KPMG LLP*, 334 Fed. Appx. at 351.  Quoting *Grondahl v. Merritt & Harris, Inc.*, 964 F.2d 1290, 1294 (2nd Cir. 1992), the Court said:  "The three-year statute of repose in federal securities law claims 'starts to run on the date the parties have committed themselves to complete the transaction.'"  *Arnold*, 334 Fed. Appx. at 351.  The Second Circuit then stated, without further explanation, that the "[p]laintiff's contention that the period of repose begins to run at the time of the last alleged misrepresentation (even when made after the final purchase or sale of the securities) ignores the applicable limitations period, and thus, is devoid of merit."  *Arnold*, 334 Fed. Appx. at 351.

Since *Arnold*, judges in the Southern District of New York—the district in which *Arnold* was commenced—have adopted three different interpretations of section 1658(b)(2).  Some have distinguished scenarios where the alleged misrepresentation was made after the transaction from situations where the alleged misrepresentation was made before the transaction, limiting *Arnold*'s application to the first scenario.  *See Liana Carrier Ltd. v. Pure Biofuels Corp.*, No. 14-cv-3406 (VM), 2015 WL 10793422 at *4 (S.D.N.Y. Aug. 14, 2015) (applying *Arnold* where the defendants misled and lied to investors after the investment and distinguishing that situation from those involving "alleged misrepresentations made *before* the purchase of securities"); *Arco Capital Corp. LTD. v. Deutsche Bank AG*, 949 F. Supp. 2d 532, 544-45 (S.D.N.Y. 2013) ("[W]here post-purchase

violations are alleged, having a repose period triggered on the date of purchase is consistent with the well-established rule that a statute of repose cannot be equitably tolled."); *Intesa Sanpaolo, S.P.A. v. Credit Agricole*, 924 F. Supp. 2d 528, 536-37 (S.D.N.Y. 2013) (distinguishing *Arnold*'s holding from a situation in which the alleged misrepresentation pre-dated the transaction).

Others, however, have followed *Arnold* without regard to the sequence of events.  *See Abrams v. Life Med. Techs., Inc.*, 135 F. Supp. 3d 185, 193 (S.D.N.Y. 2015) (applying *Arnold* even when the misrepresentations were made before the transaction); *Kaplan v. S.A.C. Capital Advisors, L.P.*, 40 F. Supp. 3d 332, 343 (S.D.N.Y. 2014) ("[A] violation of Section 10(b) and Rule 10b-5 occurs at each transaction for the purpose of calculating the repose date.").

Still others have ignored *Arnold* altogether and applied the rule articulated by the Third and Seventh Circuits—the period of repose begins when the alleged misrepresentations are made.  *See In re Longtop Fin. Techs. Ltd. Sec. Litig.*, 939 F. Supp. 2d 360, 378 (S.D.N.Y. 2013) (stating that courts in the Southern District of New York have treated Section 1658(b)(2) as a  five-year statute of repose that begins when allegedly fraudulent representations are made); *Boudinot v. Shrader*, No. 09 Civ. 10163 (LAK), 2012 WL 489215 at *4 (S.D.N.Y. Feb. 15, 2012) ("Courts in this district have treated Section 1658(b)(2) as a statute of repose and consistently stated that the five-year period begins to run from the time that the allegedly fraudulent representations were made . . . . Furthermore, the two circuits that have addressed this issue directly both have treated Section 1658(b)(2) as a statute of repose" that begins to run on the date of the alleged misrepresentation.) (citing *In re Exxon Mobil*, 500 F.3d at 200-01; *McCann*, 663 F.3d at 930-32).

Moreover, in deciding when the statute of limitations in section 1658(b)(1) accrues, the Second Circuit disregarded *Arnold* while explaining: "Unlike a statute of repose, which begins to run from the defendant's violation, a statute of limitations cannot begin to run until the plaintiff's

claim has accrued. A securities fraud claim does not accrue until after the plaintiff actually purchases (or sells) the relevant security . . . ." *Pontiac Gen. Emp'rs. Ret. Syst. v. MBIA, Inc.*, 637 F.3d 169, 176 (2nd Cir. 2011) (internal citations omitted). *see also Wike v. Vertrue, Inc.*, 566 F.3d 590, 596 (6th Cir. 2009) ("Because Congress created a separate, shorter limitations period that starts to run once the plaintiff has reason to know that he has a claim, it makes sense to treat the "violation" that triggers the five-year time bar as encompassing only the defendant's fraudulent conduct.").

The Lodge also points to the Ninth Circuit, which has stated that a plaintiff's securities fraud claim "accrues 'on the date the sale of the instrument is completed,'" but that court has not had the occasion to decide whether the statute of repose begins running at the time of the fraudulent statements or the time of the transaction. *Durning v. Citibank, Int'l.*, 990 F.2d 1133, 1136 (9th Cir. 1993) (quoting *McCool v. Strata Oil Co.*, 972 F.2d 1452, 1460 (7th Cir. 1992)). *but see Combs v. M. Case*, No. 05-00741 REJ-KSC, 2007 WL 4440958 at 2 (D. Hawaii Dec. 19, 2007) (considering *Durning* and rejecting *In re Exxon Mobil*). In *Durning*, the misrepresentations and the purchase occurred on the same date. *Durning*, 990 F.2d at 1135.

In addition, the Lodge cites a Sixth Circuit case deciding whether *American Pipe* tolling applies to various statutes of repose. *See Stein v. Regions Morgan Keegan Select High Income Fund, Inc.*, 821 F.3d 780, 792 (6th Cir. 2016). There, the complaint was filed more than five years after the latest date on which the defendants could have engaged in any of the misconduct alleged in the complaint, so the court held that the plaintiffs' claims were barred regardless of when the period of repose began to run. *Id*. The court held, in addition, that the period of repose is not tolled pending class certification, noting that statutes of repose give a defendant an absolute right to be free

from liability after the specified period of time.  *Id*. at 792-94.  *Stein* does not support the Lodge's argument.

This Court, in accordance with the Third and Seventh Circuits, holds that the period of repose provided by section 1658(b)(2) begins to run from the date of the alleged fraudulent statements and omissions because those are the acts that violate section 10(b) and Rule 10b-5.  Here, the alleged misrepresentations and omissions occurred when Harrison and Page made their presentation to the Board on or about March 17, 2010.  That is when they made the statements that allegedly were false; and that is when they failed to disclose facts that the Lodge contends were material; so that is when the alleged violation of the Securities Exchange Act occurred.  The Lodge filed its complaint on April 17, 2015, which was more than five years after the alleged violation, so the Lodge's claims for federal securities fraud are barred by section 1658(b)(2).

The Lodge attempts to avoid this conclusion by arguing that even if a "violation" for 1658(b)(2) purposes is indeed the misrepresentation or omission, its federal securities fraud claims are still timely because Harrison told Cook on April 20, 2010, that there was no update to the information previously provided.  Document #78 at 5.  According to the Lodge, Harrison had a continuing duty to correct prior false statements and unspecified "continuing misrepresentations" occurred within five years of the filing of the lawsuit.  Document #70 at 6; Document #98 at 6.  The Lodge's argument reduces to the proposition that the defendants made material misrepresentations and omissions on or about March 17, 2010, and should have but did not correct that misinformation before the Lodge executed the subscription agreements on April 20, 2010.  All of this is simply another way of arguing that the period of repose does not begin until the transaction is closed.  To hold that a continuing duty to correct misinformation postpones commencement of the statute of repose would be tantamount to holding that the five-year period of repose does not begin to run until

the transaction closes; but that is not what the statute says.  Congress easily could have provided for the period of repose to begin running on the date of the transaction, but it did not.

Here, the violation occurred in March of 2010 when Harrison and Page made their presentation to the Board.  That is when they made the alleged fraudulent statements and omissions.  The Lodge filed its complaint more than five years later, so its federal securities fraud claims are barred.

**B.      Ark. Code Ann. 23-42-106(a)(1)(B) Securities Fraud.**

The Equity Fund and the United Group argue that the Lodge's claims under the Arkansas Securities Act are barred by its three-year statute of limitations.  The relevant statute[6] in effect at the time of the events in this case was Ark. Code Ann. § 23-42-106(f) (July 30, 1999), which provided that "'[n]o person may sue' under the statute 'after three (3) years from the effective date of the contract of sale.'" *Zarecor v. Morgan Keegan & Co. Inc.*, 801 F.3d 882, 891 (8th Cir. 2015); *see also Morton v. Tullgren*, 263 Ark. 69, 72-73, 563 S.W.2d 422 (1978) (indicating that the relevant statute of limitations is the one in effect at the time the alleged actions occurred, rather than the one in effect at the time the action was filed).  The discovery rule does not apply.  *Zarecor*, 801 F.3d at 891.  There is no dispute that the Lodge purchased the subscription agreements on April 20, 2010, and did not file suit within three years.  The Lodge's claims for securities fraud in violation of the Arkansas Securities Act are barred.

---

[6] This action would also be barred under the current statute of limitations, which was in effect at the time the Lodge commenced this action.  Ark. Code Ann. § 23-42-106(g) (Aug. 16, 2013) ("A person may not sue under this section unless the action is instituted within three (3) years after the violation occurred.").  Furthermore, by the time the legislature enacted the new statute of limitations, the Lodge's action was already barred under the prior statute of limitations and the legislature "only has the power to amend statutes of limitation affecting causes of action *which are not yet barred*."  *Reeves v. State*, 374 Ark. 415, 420, 288 S.W.3d 577, 581 (2008).

**C.     Fraud.**

In addition, the Equity Fund and the United Group argue that the Lodge's claims for common law fraud are barred by the applicable three-year statute of limitations. *Nobles v. Tumey*, 2010 Ark. App. 731, 9, 379 S.W.3d 639, 646 (2010) (citing Ark. Code Ann. § 16-56-105 (Repl. 2005)). "Absent concealment, the statute of limitations begins to run upon the occurrence of the wrong, and not when it is discovered." *Id*.  In other words, for a plaintiff to benefit from the discovery rule—which tolls the statute of limitations until the cause of action is discovered or should have been discovered by reasonable diligence—there must "be some positive act of fraud, something so furtively planned and secretly executed as to keep the plaintiff's cause of action concealed, or perpetrated in a way that it conceals itself." *Id*. at 9-10, 379 S.W.3d at 646.

The Lodge argues that representatives of the Equity Fund and the United Group concealed the fraud, tolling the statute of limitations until September 2013.  Document #98 at 9-10.  Without tolling, the statute of limitations began to run when the wrongful acts occurred in 2010 and it expired in 2013.  *See Floyd v. Koenig*, 101 Ark. App. 230, 233, 274 S.W.3d 339, 342 (2008).  Because it is clear that the fraud claims are barred by the three-year statute of limitations, the Lodge must demonstrate by a preponderance of the evidence that there is a basis for tolling.  *Reed v. Guard*, 374 Ark. 1, 3, 285 S.W.3d 662, 664 (2008).  "[T]here must be (1) a positive act of fraud (2) that is actively concealed, and (3) is not discoverable by reasonable diligence." *Bomar v. Moser*, 369 Ark. 123, 131-32, 251 S.W.3d 234, 242 (2007).

No evidence shows that the Equity Fund or the United Group engaged in a positive act of fraud separate and distinct from the fraud upon which the Lodge's claims are based.  Again, the evidence shows only that on April 20, 2010, in a conversation with Cook, Harrison stated that he had no updates to the information previously provided.  This is not the "secretive, furtive, or

13

deceptive action designed to conceal the existence of a fraudulent act" necessary to satisfy the Lodge's burden. *Delanno, Inc. v. Peace*, 366 Ark. 542, 547, 237 S.W.3d 81, 86 (2006). "Though the question of fraudulent concealment is usually one of fact and unsuited for summary judgment, when there is no evidentiary basis for a reasonable difference of opinion, a trial court may resolve the question as a matter of law." *Id.* at 545, 237 S.W.3d at 84. Here, there is no basis for a reasonable difference of opinion. Therefore, the Lodge's claims for fraud under Arkansas law are barred.

## CONCLUSION

The Equity Fund and the United Group's motion for summary judgment is GRANTED. Document #65. All of the Lodge's claims against the Equity Fund and the United Group are dismissed with prejudice. The Lodge moved for leave to file its second amended complaint as a means of responding to the motion for summary judgment filed by the Equity Fund and the United Group. Because the Court has granted that motion for summary judgment, the motion for leave to amend is DENIED AS MOOT. Document #81.

IT IS SO ORDERED this 19th day of October, 2016.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE